# WILLIAM F. DOWNS *vs.* STATE OF MARYLAND.

*Petition for Removal of Criminal Case to Another Court for Trial—Constitutional Law—Discretion of Trial Court—Appeal.*

When a person indicted for a crime not punishable by death petitions the Court to direct the case to be removed for trial to a Court of another county, suggesting that he cannot have a fair and impartial trial in the former Court, it is necessary, under Constitution, Art. 4, sec. 8, as amended in pursuance of the Act of 1874, Ch. 364, that he make it satisfactorily appear to the Court that his suggestion is true, or that there is reasonable ground for the same. The petition is addressed to the discretion of the Court, which is not to be controlled by the mere belief of the party or his witnesses that he cannot have a fair trial in that Court.

On appeal from an order of a Court refusing to direct the removal of such indictment to another Court for trial, if there be no evidence to show that the Court below acted arbitrarily, and abused or refused to exercise the discretion given to it by the Constitution, this Court cannot say that the removal should or should not have been directed, and can only affirm the action of the lower Court.

In this case, where such petition for the removal of the trial of an indictment for larceny was filed in the Court where the indictment was found, and refused by that Court after a hearing, it does not appear on appeal from the affidavits presented and the extracts from newspaper articles denouncing the accused, that the discretion vested in the Court was abused, and therefore the order refusing the petition for the removal of the case is affirmed.

*Decided per curiam June 1st, 1909. The following opinion was filed June 30th, 1909.*

Appeal from the Criminal Court of Baltimore City (EL-LIOTT, J.).

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*Thos. C. Weeks* and *Harry B. Wolf,* for the appellant.

*Isaac Lobe Straus, Attorney-General,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

The record in this case contains nine indictments against the appellant, filed at the January Term of the Criminal Court of Baltimore City, numbered 698 to 706, inclusive, and in each indictment he is charged, in the first count, with the larceny of money belonging to the Mayor and City Council of Baltimore, and, in the second count, with receiving the money, knowing it to have been stolen.

On the 23rd of April, 1909, the appellant was arraigned in each of these cases and pleaded "not guilty," and on the same day, as shown by the docket entries, filed in case No. 698 the following petition, supported by his affidavit:

William F. Downs, the defendant in the above cause, respectfully suggests that he cannot have a fair and impartial trial in this Honorable Court, and accordingly prays that an order may be passed directing the record of said cause to be transmitted to some other Court for trial.

And the said William F. Downs further respectfully shows to the Court that he is advised that there is intense prejudice and bitter feeling prevailing against him throughout the City of Baltimore in connection with the charge for which he stands indicted; that in the newspapers of Baltimore City, accounts have been published from time to time regarding the larceny with which the said William F. Downs is charged, and in which accounts it has been unqualifiedly and repeatedly represented that this defendant is guilty of said charge; that he has agreed to confess his guilt, and that Honorable Albert S. J. Owens, State's Attorney for Baltimore City, in interviews said that he will convict Downs, as the proof is positive; that said newspaper accounts are prejudiced, sensational and false, but that nevertheless said accounts are composed largely of public interviews, statements, editorials and caricatures.

Detectives, police, city and State officials and any number of taxpayers of Baltimore City who are interested in the prosecution of this defendant, and who by various prejudiced assumptions and diverse comment have so affected the minds and the feelings of the people of Baltimore City generally as to cause virtually universal bias, bitterness and enmity against this defendant throughout the said city, and to cause general prejudgment in the case of the defendant adverse to him so as to render it impossible for him to secure a fair and impartial trial in said city or to have testimony which may be adduced during the trial of his case weighed and passed upon in an unprejudiced, dispassionate and just manner by any jury which may be impannelled in the City of Baltimore to determine this defendant's innocence or guilt.

And in connection with the foregoing the said William F. Downs, defendant, prays respectfully to refer the Court to said

newspaper accounts excerpted from all newspapers of Baltimore City possessing any considerable circulation, said accounts being filed herewith and marked "Defendant's Exhibit No. Two" and prayed to be taken as part hereof.

And as in duty bound, etc.,

HARRY B. WOLF,
Attorney for Defendant.

With this petition the appellant also filed seventeen affidavits, each stating that the affiant, for the reasons assigned in the affidavit, believed that the prisoner could not obtain a fair and impartial trial in Baltimore City, and numerous clippings from the newspapers of Baltimore City.

The record also shows that the Court heard the petition, and argument of counsel for the appellant in support thereof, and from the remarks of the Court in passing on the petition, which are set out in full in the record, it is apparent that the Judge presiding fully considered the reasons assigned in the various affidavits, and the effect of the publication of the articles, etc., contained in the newspaper clippings, and refused to remove the case because it did not satisfactorily appear that the appellant could not have a fair and impartial trial in said Court.

On the petition of the prisoner the record in the case was transmitted to this Court for the purpose of having the action of the Court below, in refusing to grant a removal of the case, reviewed.

The Constitution of 1851, section 28 of Art. 4, provided that: "In all suits or actions at law," etc., pending or thereafter instituted, in any of the Courts of law of the State, "the judge or judges thereof, upon suggestion in writing, if made by the State's attorney, or the prosecutor for the State, or upon suggestion in writing, supported by affidavit made by any of the parties thereto, or other proper evidence, that a fair and impartial trial cannot be had in the Court where such suit or action at law, issues or petitions, or presentment and indictment is depending, shall order and direct the rec-

ord, etc.," "to be transmitted to the Court of any adjoining county."

In reference to this provision, the Court in the case of *Griffin* v. *Leslie,* 20 Md. 15, said wherever and whenever the privilege of removing a case has come under consideration, it has been construed liberally, and, quoting from an earlier case, that: "All laws for the removal of causes from one venue to another, were passed for the purpose of promoting the ends of justice, by getting rid of the influence of some local prejudice which might operate detrimentally to the interests or the rights of one or the other of the parties to the suit. The condition prescribed by the Constitution and Acts of Assembly for the exercise of this right, being complied with by the party applying for it, there is no discretion in the tribunal to which it is made, to decide whether the application shall be granted or not."

By the Constitution of 1864, section 9, Art. 4, it was provided that: "The Judge or Judges of any Court of this State, except the Court of Appeals, shall order and direct the record of proceedings in any suit or action, issue or petition, presentment or indictment pending in such Court, to be transmitted to some other Court in the same or any adjoining circuit having jurisdiction in such cases, whenever any party to such cause, or the counsel of any party shall make it satisfactorily appear to the Court that such party cannot have a fair and impartial trial in the Court in which such suit or action, issue or petition, presentment or indictment is pending," etc.

We do not find any case dealing directly with this provision of the Constitution of 1864, which was changed by the Constitution of 1867, adopting, so far as the feature with which we are now dealing is concerned, substantially the provision of the Constitution of 1851, but in the case of *Hoyer* v. *Colton,* 43 Md. 421, JUDGE ROBINSON, referring to the provision of the Constitution of 1867, said: "The obvious purpose of this provision was to secure to every one a fair and impartial trial, by getting rid of the influence of local

feeling and prejudice; and whenever the privilege has come under consideration, it has been liberally construed. *State v. Dashiell,* 6 H. & J. 268; *Negro Jerry v. Townshend,* 2 Md. 278; *Griffin v. Leslie,* 20 Md. 15. However much the right thus conferred may have been, or may hereafter be abused, the exercise of it has been considered so essential to the proper administration of justice as to be made the subject of constitutional provision in every Constitution adopted in this State since 1851; and in no previous Constitution, has it been more securely protected than in the present Constitution. Whilst under the Constitution of 1864, it was necessary for the party making the application for removal to satisfy the Court by proper evidence that fair and impartial trial could not be had in the Court in which the cause was pending, the present Constitution confers the right in *every case, civil or criminal, upon the mere suggestion and affidavit of the party.* No discretion is vested in the Court; and the only power conferred upon the Legislature is 'to make such modifications of existing laws as may be necessary to regulate and give force to this provision.' The nature and extent of the power thus conferred, was considered by this Court in *Price v. Nesbitt,* 29 Md. 264, and it was held that the Legislature might enlarge but could not in any manner impair or restrain the right."

It was doubtless because of some abuse of the unqualified privilege of removal provided for in the Constitution of 1867 (see case of *Cooke v. Cooke,* 41 Md. 362), that the people adopted, November 15th, 1875, the amendment proposed by the Act of 1874, Ch. 364 (Code of 1904, pages 142-143, and sec. 102 of Art. 75), by which it is provided that in all criminal cases, other than "cases of presentments or indictments for offences which are or may be punishable by death"—"in addition to the suggestion in writing of either of the parties to such presentment or indictment that such party cannot have a fair and impartial trial in the Court in which the same may be pending, it shall be necessary for the party making such suggestion to make it satisfactorily appear to

the Court that such suggestion is true, or that there is reasonable ground for the same."

By this amendment the Courts are again given the discretion in all criminal cases, except where the offence is punishable by death, provided for in the Constitution of 1864, and referred to by JUDGE ROBINSON in the case of *Hoyer* v. *Colton,* and in the case of *Smith* v. *State,* 44 Md. 530, where the traverser was indicted on the 9th of November, 1875, and, on the 18th of December following, filed a suggestion for removal from the Criminal Court of Baltimore City, with an affidavit that the suggestion was true, and that Court after argument overruled the motion for removal, this Court held that as the amendment adopted on the 15th of November, 1875, was in full force when the suggestion was filed, and he had failed to make it satisfactorily appear to the Court below that his suggestion was true, etc., even if the appeal had been well taken, the Court would have affirmed the action of the Court below.

The nature of the duty imposed upon the Courts by this provision has never been definitely determined by this Court, but there are two things, we think, equally apparent: first, that the Legislature in proposing, and the people in adopting this amendment never intended to do away with a right that had so long been secured by appropriate laws or constitutional provisions, and had been found in this State and elsewhere so essential to the proper administration of justice; second, that in order to preserve this right for cases in which its exercise is so important, and at the same time prevent abuses of the privilege, it was deemed advisable to leave it in all criminal cases, except where the offence is punishable by death, to the discretion of the Courts, in whom the people of this State have always imposed great confidence, believing that it would not be denied by them to the accused in any proper case.

Where, therefore, upon a suggestion for removal, it satisfactorily appears to the Court that the accused cannot have a fair and impartial trial in said Court, or that there is reason-

able ground for the suggestion, his right to have his case removed is just as absolute as it was prior to the adoption of the amendment; *but until it does so appear no such right exists.* As it is now necessary to make it satisfactorily *appear to the Court in which the suggestion is made* that the party charged in the presentment or indictment is entitled to the order for removal, and as no other tribunal can determine when it *does so appear to that Court,* it follows as a logical conclusion that in the absence of evidence to show that the Court below acted arbitrarily and abused or refused to exercise the discretion given it by the amendment, this Court cannot say that the removal should or should not have been granted, and can only affirm the action of the lower Court.

This view is in entire harmony with the construction placed upon similar provisions elsewhere. In 12 *Cyc.* 243, where decisions from many of the States are cited, it is said that, "An application for a change of venue in a criminal case is usually held to be addressed to the sound discretion of the Court, and for this reason its refusal is not reversible error unless it appears from the facts presented on the appplication that the Court acted unfairly, or that there was a palpable abuse of the judicial discretion. But it has been held that where the application for a change of venue is based upon the prejudice of the judge he has no discretion to refuse it." In 4 *Ency. P. & P.* 499-502, it is stated that, "Where the lower Court is vested with a discretion to grant or refuse a change of the place of trial, its action will not be revised unless there has been an abuse of the discretion. The reason for this rule is obvious. Whether a change of venue is necessary to obtain a fair and impartial trial is not a question of law, but of fact. A judge on the spot, viewing all the circumstances, and having knowledge of persons, facts and influences, is much better qualified than is an appellate Court at a distance, with only *ex parte* affidavits before it, to determine the fact whether or not it is true that the defendant cannot have a fair trial by an impartial jury in the county in which he is indicted or in which the plaintiff has commenced his suit." *Mr. Bishop,*

in speaking of the discretion of the judge, says: "The discretion, as just said, is judicial, not personal, in the individual judge.  The course of the Courts in our States differs as to reviewing, in a higher Court, a judicial discretion exercised in a lower.  There are States in which the higher tribunal will rarely or never interfere in this matter of changing the venue; but the better and more common doctrine is, that the decision of the lower Court will be corrected in extreme cases of abuse, and in no other."  1 *Bishop's New Criminal Proc.,* sec. 72, par. 2.  In the case of *Commonwealth* v. *Allen,* 135 Pa. 483, 19 At. 957, where the statute provided for a change of venue when it "is made to appear to the satisfaction of the Court" that the grounds upon which the application is made are well founded, the Court said: "In this case, we are bound to presume that it did not appear to the satisfaction of the Court that the defendant could not have a fair trial in Potter County.  For anything the record discloses, the discretion of the learned judge was properly exercised.  In any event, there was no such abuse of discretion as would justify our interference."  In the case of *Hauk* v. *State,* 148 Ind. 238, 46 N. E. 127, the Court said: "A change of venue in a criminal action, not punishable by death, by the provisions of sec. 1771, Rev. St. 1881 (sec. 1840. Rev. St. 1894), is left to the sound discretion of the trial Court; and, under a firmly settled rule, it must affirmatively appear upon appeal that the discretion has been abused to the injury of the complaining party."  See also *State* v. *Smarr,* 121 N. C. 669.

So, in examining the record in this case we must do so not with the view of deciding whether upon the petition, affidavits and exhibits filed in the Court below, this Court would have been *satisfied* that the appellant could not have a fair and impartial trial in the Criminal Court of Baltimore City, or that there were reasonable grounds for the suggestion, but for the purpose of ascertaining whether there has been an *abuse* by that Court of the discretion *given it.*

The ground of the appellant's petition was that he was

advised that there existed in Baltimore City such "an in-
tense prejudice and bitter feeling against him," by reason
of the great publicity given by the newspapers to his alleged
connection with the crime with which he is charged, and the
statements of public officials and taxpayers of the city inter-
ested in his prosecution, that it would be impossible to have
the testimony in the case "passed upon in an unprejudiced,
dispassionate and just manner, by any jury impanelled in
the City of Baltimore."

As proof of the existence of such a prejudice there was
filed, as we have said, seventeen affidavits, in which the affi-
ants state *their belief* (based in some instances upon inter-
views had with various persons, and the fact that the appel-
lant was associated in the mind of the public with the com-
mission of the offense), that the appellant could not have a
fair and impartial trial in said Court, and numerous clip-
pings from the newspapers of Baltimore City, referring to
the appellant and his supposed connection with the crime.

. We have examined these clippings from the newspapers-
and do not find in them *conclusive evidence* of the existence
of such an intense public prejudice against the accused as
would enable this Court to say that the Court below abused
the discretion given it in refusing to grant a removal of the
case. They do show that great publicity was given to the
appellant's supposed connection with the larceny of the City's
money, but it does not *necessarily* follow that by reason
thereof there existed such a prejudice against the accused as
to render it impossible for him to secure a fair and impar-
tial trial in Baltimore City. Crimes of the nature of the
one with which the appellant is charged naturally give rise
to much newspaper and other comment, but such comment .
does not always arouse such a general prejudice against the
accused as to render it impossible for him to secure a fair
trial in the county or city where the crime is committed, and
it is for the Judge to whom the suggestion is made, to deter-
mine, on the proofs presented to him, whether such prejudice
exists. It is said in 4 *Ency. P. & P.* 401, that "Newspaper

articles denunciatory of the accused are not in themselves sufficient to evidence the existence of such prejudice as will justify a change," and in the case of *People* v. *Sharp,* 5 N. Y. Crim. Rep. 155 ; *People* v. *Squire,* 1 N. Y. St. Rep. 534, and *State* v. *Smarr,* 121 N. C. 669, where very interesting discussions of the effect of newspaper articles as tending to show the existence of prejudice against the accused may be found, a similar view is announced.

Nor do the affidavits contain such *positive evidence* of the existence of prejudice against the appellant as would *necessarily* control the action of the Court below. These affidavits, as we have said, express the *belief* of the parties, based on interviews had with various persons, *without stating what was said in such interviews,* and the fact that in the mind of the public the appellant was associated with the crime committed, and, in the *judgment of the Court, the honest belief* of the parties who made these affidavits may not have been well founded. *Mr. Bishop* says that, "The venue will not be changed for the mere belief of the party or his witnesses that he cannot have a fair trial in the county. Facts and circumstances must appear, satisfying the Court." See also 12 *Cyc.* 246-7-8. And in 4 *Ency. P. & P.* 434, it is said that, "Facts must be shown from which the Court can deduce the conclusion that the ground relied on for the change actually exists; and, as a rule, mere belief, opinions or conclusions will not be sufficient to warrant the Court in exercising its power, unless the information upon which the belief is founded, or the grounds upon which the opinions or conclusions are based, are sufficiently shown."

Without further prolonging this opinion, or discussing the numerous other authorities furnished through the commendable industry of counsel in their carefully prepared briefs, it follows from what we have said that the record does not show that the Court below abused the discretion given it, and that the order refusing to remove the case must, therefore, be affirmed, in accordance with the *per curiam* order filed on June 1, 1909.                    *Order affirmed with costs.*

WORTHINGTON, J., dissents.