EUEL LEE *v.* STATE OF MARYLAND.

[No. 105, October Term, 1931.]

*Decided December 29th, 1931.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Bernard Ades,* for the petitioner.

*Wm. Preston Lane, Jr., Attorney General,* and *Willis R. Jones, Deputy Attorney General,* with whom was *William L. Marbury, Jr.,* on the brief, for the State.

*John H. Skeen* and *Reuben Oppenheimer* presented a brief as *amici curiae.*

BOND, C. J., delivered the opinion of the Court.

The appellant, or plaintiff in error, indicted on charges of murder in Worcester County, exercised his constitutional right to have the cause upon his indictment removed from the circuit court for that county for trial (Constitution of Maryland, art. 4, sec. 8), and now, before any further proceedings have been had below, he seeks, by a petition as upon a writ of error, under the Code, art. 5, sec. 4, a reversal by this court of the trial court's selection of the place for trial. But action upon that question at this stage of the cause seems clearly barred by the rule that this court cannot take up cases from the trial courts piecemeal. Its jurisdiction is limited to the reviewing of final actions of the trial court. And the selection of a place for trial in a court's discretion is not such a final action, and therefore no decision can be had here upon the selection until after trial has been held and final judgment rendered. This is true in a proceeding as upon a writ of error as well as in the ordinary appeal. *League v. State,* 36 Md. 257; *Avirett v. State,* 76 Md. 510, 514, 25 A. 676, 987. All parties agree that selection of the forum is a matter to be disposed of in the discretion of the removing court, and this court can ordinarily take no part in the decision at any time. *Weiskittle v. State, use of Samuel,* 58 Md. 155; *Kimball v. Harman,* 34 Md. 401, 406. Indeed, this is the first time during the history of the court that it has definitely been asked to review the selection made by a trial court upon removal of a case. The question presented in the case of *Atlantic & George's Creek Co. v. Maryland Coal Co.,* 64 Md. 302, 1 A. 878, 880, cited in argument on this point, was rather the question of the right of a trial court to change

its designation, once made, of the place for trial, before the record had been transmitted to the jurisdiction first selected. And it was held that so long as the record was still in the removing court, during the one term of court at least, such an order could be changed. The opinion of this court in the case added that "No matter from what source the court gets information to aid its discretion, when exercised, it must be regarded as properly done in the interest of justice. * * * The whole matter was the subject of discretion and unreviewable." But in that remark the court was not deciding the question now submitted.

In many cases it has been decided that a refusal to grant a removal when the Constitution gives an absolute right of removal, as it does in all cases on charges of capital crimes, amounts to a final judgment on the constitutional right, and is immediately open to review in this court on the record. *Smith v. State,* 44 Md. 530; *McMillan v. State,* 68 Md. 307, 12 A. 8. But only decisions on claims of such absolute constitutional rights have been held reviewable at once, and there has been a decision on the precise point that orders within the discretion of the lower courts are, on the contrary, not final orders within the meaning of the rules governing the jurisdiction of this court, and are therefore not immediately reviewable, if reviewable at all. *Tidewater Portland Cement Co. v. State,* 122 Md. 96, 89 A. 327. And see *City of Annapolis v. Howard,* 80 Md. 244, 30 A. 910. It is true that in the earlier case of *Downs v. State,* 111 Md. 241, 73 A. 893, the court had before it an appeal taken immediately from a discretionary order on a suggestion for removal, and, after having found the discretion not abused, affirmed the order instead of dismissing the appeal. The question of jurisdiction to entertain the appeal appears not to have been raised, and of course, as the court did not find any abuse of the lower court's discretion, the distinction between dismissing the appeal and affirming the order was without importance in the case. But we think it must be assumed that, if the distinction had been noticed, the court would have been in agreement with the disposition made of the later appeal, because

the general principles governing appellate proceedings require it, and the consequences of a contrary practice would have been regarded as prohibitive. If, on a question left to the court's discretion, upon a suggestion for removal, a prisoner is permitted to take an immediate appeal, then proceedings in every criminal case, great or small, may be stopped and delayed while the accused prosecutes an appeal on this preliminary matter of venue. And this would add just so much to the resources of those who might find vexatious delays advantageous, and would multiply appeals in criminal cases, often when acquittals, in the end, would render them profitless. The rule followed in the later case of the *Tidewater Portland Cement Co. v. State, supra,* is the correct rule, and must be followed in this case. The accused has been allowed his constitutional right of removal from the court of origin, and therefore has no complaint of a denial of that right, which has been held immediately reviewable; and he seeks a review only of the subsequent discretionary selection of a new court for the case, and on that selection no appeal or proceeding as upon writ of error now lies. The proceeding upon the assignment of error must be dismissed.

While this ruling disposes of the present proceeding in this court, we shall, however, follow in the course adopted in several previous cases, and express an opinion on the questions sought to be reviewed, because, if the court entertains now views which might later cause a reversal of a conviction of this prisoner and necessitate a second trial, it seems desirable that those views should be expressed while the case is before the court. It cannot be the practice to do this ordinarily, but we agree that the course may well be followed in this case.

A family of four were killed, a farmer, his wife, and two daughters, and the act has had the natural effect of arousing high popular excitement and anger in the county; and, after the petitioner had been arrested, lawless elements in the population attempted more than once to seize him and wreak vengeance upon him, and he was taken by the public authorities to the jail in Baltimore City for security, and, except for a trip back to Worcester County for arraignment, has ever

since been lodged in the Baltimore City jail. The circuit court appointed Mr. Leonard F. Wailes, one of the leading members of the bar of the state, to act as counsel for the accused, and Mr. Wailes had taken the first steps for the defense, when Mr. Bernard Ades, described in some of the papers filed by him as having been retained for the accused by an organization known as the International Labor Defense, appeared and claimed the right to act as the sole representative of the accused by virtue of a written authorization which the accused had signed; and this fact has added to the anger and antagonism of the population, because of a belief that Mr. Ades had been foisted upon the accused as counsel by an organization the objects and activities of which they believed were not confined to aiding prisoners, but included ulterior and principal objects and activities offensive to the community. And it is recited, among the grounds for the further relief sought on behalf of the accused, that part of the public excitement and anger is directed against the International Labor Defense, its agents, and the attorney employed by it. Any question whether Mr. Ades was or was not improperly foisted upon the accused, however, is one which this court, concurring with the lower court, takes as settled for the purposes of the case, and the employment is to be considered here only in so far as it may be a source of irritation endangering a fair and impartial trial of the accused on the charges against him. The popular feeling aroused from all causes together, it is alleged by Mr. Ades, extends throughout all the counties of the Eastern Shore of the State, including Dorchester County, to which the cause has been ordered removed.

The record does not present the question argued as fully as it has been presented in argument. Counsel for the accused has referred to particular outbreaks and manifestations to show the popular state of mind, which would render a fair and impartial trial in the region unlikely, as suggested by him; but not all the particular facts cited could be regarded as having been within the knowledge of the court below or

regularly brought to its attention. The facts and conditions alleged are substantially these:

The homicide was committed on October 11th, 1931, and the accused, a colored man, was arrested on the next day. In one of the petitions for removal, it is alleged that upon arrest he was for sixteen hours subjected to maltreatment by officials of Worcester County, and kept without food or drink; that on October 13th, a mob of citizens of Worcester County prepared to lynch the prisoner, and he was then removed to Baltimore City; that on October 19th, he was brought back to Worcester County under guard, and was arraigned, pleaded not guilty, and elected to be tried by a jury, was immediately removed to Cambridge, in Dorchester County; and that then a mob started from Worcester County to go to Cambridge and lynch the man; and that he was, upon the advice of the chief judge of the circuit, again removed to Baltimore City for safe-keeping. It was on October 19th, according to the allegations, that the prisoner agreed to employ Mr. Ades. It is represented that on October 26th, and again on November 5th, in a belief that the accused was in Snow Hill, the county seat of Worcester County, a mob surrounded the jail there, gained entrance, and searched it for the purpose of seizing and lynching him. On November 5th, the mob, it is alleged, waited in the streets until three o'clock in the morning, and it was necessary to add ten deputy sheriffs and twenty-five members of the state police force to the ordinary force to preserve order. These manifestations are attributed, on behalf of the accused, to outbreaks of racial prejudice; and, as evidence of the extension of the popular feeling, it is recited that, on November 23rd, a mob at Chestertown, in Kent County, about a hundred miles to the north, searched the jail, and also the jails of some nearby county seats, to take one George Davis, colored, and lynch him, and that it was thought necessary to remove Davis, too, to the Baltimore City jail for security. And it is alleged, further, that since the arrest of the accused there have been popular attacks on negroes in two other towns in the circuit.

On November 4th, it is alleged, Mr. Ades appeared in court at Snow Hill for the purpose of removing the cause, remained in the court-house there seven hours, until four o'clock in the afternoon, during all of which time a mob surrounded the court-house, warned Ades to leave the town, and also attacked and beat him, together with two representatives of the organization which employed him, and wrecked his automobile, and made it necessary for him to go to Salisbury in Wicomico County for repairs. No steps have been taken, it is alleged, to apprehend and punish the persons guilty of the disorders recited. With one of the petitions filed by Mr. Ades, there are exhibited copies of two newspaper editorials, one said to be from a newspaper in Salisbury, Wicomico County, and one from a newspaper in Snow Hill; and both express a spirit of vengeance, but dwell largely upon the irritation caused by the action of the intervening organization and its agents. The second editorial closed with a statement that the mob which attacked Ades and his compatriots was composed of men from three states, who believed that a citizen of Snow Hill had been threatened with a gun by a woman who represented herself as Ades' protector.

On November 6th, suggestions for removal of the cause from the Circuit Court for Worcester County were filed by both Mr. Wailes and Mr. Ades, the former suggesting that the cause be removed to some other court of the same or of the adjoining circuit, and the latter, as already stated, suggesting that it be removed from the Eastern Shore of the State altogether. And on the same day, November 6th, the order for removal to the Circuit Court for Dorchester County was signed, and the record was transmitted to the second county. The case was set for trial at Cambridge on November 19th, and from copies of official correspondence, exhibited in the briefs of counsel on appeal, it would appear that elaborate provisions were made for guarding the prisoner and his counsel with troops and state police while in the town and while going to and from the town in boats. And here again, it would appear that the fears of violence were to a large

extent based on the popular antagonism to Mr. Ades and his organization. The chief judge of the circuit, on November 13th, expressed a belief that there would be no serious trouble if Ades did not appear; but that there was some doubt as to the result of his coming. The official estimate of the danger from popular feeling is illustrated by a plan which appears to have been suggested by the state's attorney of Dorchester County to the Governor of the State, that the accused be brought to Cambridge by boat strongly guarded, and that during the period of trial he should be housed on one of the boats, anchored in the stream at night, instead of being held in the ordinary manner in the county jail. And the Attorney General of the State, when requested to aid in the trial for the State, announced his conviction that a fair trial could not be had in Dorchester County, and strongly urged that trial there should not be attempted. On appeal, the Attorney General has felt constrained to declare his continued adherence to this position.

After the determination that Mr. Ades had authority from the accused to represent him, the trial was delayed, and he transmitted several motions or petitions to the clerk of the Circuit Court for Worcester County. In a motion or petition of November 20th, he complained that he, as counsel for the accused, had not been given an opportunity by the clerk of the original court to inspect the record before its transmission upon removal of the cause, as required by the Code, art. 75, sec. 110; and that because of that omission the cause had not been completely and effectually removed. Upon this, the state's attorneys of the two counties united in a petition that the papers be returned to the Circuit Court for Worcester County to afford the necessary opportunity for the inspection, and it was so ordered by the judges sitting as the Circuit Court for Dorchester County. In argument, some question of the effect of the return of the papers has been raised, but we have no doubt that the action was a proper remanding of the case, and that the effect was to leave the case in the Worcester County court, so that the subsequent orders were properly passed by the judges as of the court of that county.

The statutory provision cited provides that "no cause so removed shall stand for trial in the court to which sent unless it shall appear from the record so transmitted either that such opportunity to inspect the record has been given as aforesaid or that such inspection has been waived." The words "no cause so removed shall stand for trial," must, we think, be construed to intend that removal from the original court shall not be considered completed; for in the contemplation of the statute the inspection is to take place before transmission to the second court, and a case cannot reasonably be regarded as lodged in the second court so long as it is not yet capable of being tried there. The case being in the Circuit Court for Worcester County after the remanding, that court had power to pass further orders in it, including orders modifying or revoking previous orders for removal. *Manly v. State,* 7 Md. 135, 147, 148; *Selh v. Chamberlaine,* 41 Md. 186, 194; *Atlantic & George's Creek Co. v. Maryland Coal Co.,* 64 Md. 302, 1 A. 878.

The Circuit Court for Worcester County then set for hearing, on the afternoon of November 27th, all motions, petitions, or suggestions which might be filed on behalf of the accused before that time, and notice of the hearing was duly given to Mr. Ades. The state's attorney made affidavit that on the late afternoon of November 25th, in a telephone conversation, he notified Mr. Ades further, that evidence would be received at the hearing; and the fact is denied by Mr. Ades. Instead of appearing at the hearing, because, as he informed the court, he could not appear without an armed guard, he filed with the clerk, on behalf of the accused, another motion or petition for removal from the Eastern Shore counties. This was answered on the same day by the state's attorney, and while not denying the occurrences alleged to have taken place in Snow Hill, and the preparations deemed necessary at Cambridge, he attributed the difficulties chiefly to misconduct of Mr. Ades. The answer denied the existence of any reason for changing the order of November 6th, selecting the Circuit Court for Dorchester County for trial. And on November 30th, the second order of court, from which

the appeal is taken, was passed by the Circuit Court for Worcester County. It recited that the judges had very carefully investigated the conditions, not only in Dorchester County, but in all other sections of the Eastern Shore where the conditions might have bearing upon the question whether the defendant could have a fair and orderly trial in the Circuit Court for Dorchester County, and, as a result, had been unable to obtain any information which would lead them to believe that the defendant could not have a fair and impartial trial in that court; and, upon this conclusion, the last suggestion, petition, or motion was dismissed, and the clerk of the court was again directed to forward a transcript of the record in the cause to that court for trial in compliance with the original order of November 6th. The copies of communications between state officials exhibited in this court contain a statement by the state's attorney of Dorchester County that he and the state's attorney of Worcester County had joined the judges in the inquiry made, and had come to the conclusion that there was no thought among the people of organized effort to harm either the accused or his counsel, Mr. Ades, and that no part of the militia would be needed; but suggested that a detachment of state police might accompany the accused to Cambridge and remain during the trial, to prevent his escape and assist in keeping order in case trouble should arise from activities in the town of the organization which had employed Mr. Ades. The accused has sought review of both orders for the removal; that of November 6th and that of November 30th, in which the one action of selecting the forum was embodied. The passage of the latter order was, in fact, the disposing action.

Reference is made in this court to a lynching of another negro in Salisbury, in Wicomico County, about twenty-five miles from Cambridge, and in the same circuit, since the case was transferred to this court for review, but this is one of the facts which was not before the lower court, and its action could not have been adapted to a fact which had not occurred, and we have no ground for supposing that the court

would have failed, or would now fail, to give the fact all the effect it should have.

As has been stated, not all the outbreaks and manifestations recited in the proceedings in this court were placed before the judges of the trial court. Many of them were, of course, known to the judges, having occurred under their eyes, but others were not known. There are some salient facts in the case, however, on which there is no dispute, and we express our opinion on these.

The meaning of discretionary power in a trial court, and the rules governing review of discretionary orders on appeal, have often been stated in vague, loose terms which furnish no exact guidance; but for the purposes of this case it seems to us sufficient to observe only that the judgment and discretion must be exercised in solving the exact problem of the law, upon all the considerations which properly enter into the problem, and form it. For instance, the discretion being for the solution of the problem arising from the circumstances of each case as it is presented, it has been held that the court could not dispose of all cases alike by a previous general rule. *Union Bank v. Ridgely,* 1 H. & G. 324, 407. And a decision on a motion for a new trial, the most familiar of the decisions entirely within the discretion of the trial court, is open to an appeal for correction of error in a refusal to receive evidence of facts which should be considered in the basis of the discretionary decision. *Washington, B. & A. Elec. R. Co. v. Kimmey,* 141 Md. 243, 250, 118 A. 648. And see *Horton v. Horton,* 157 Md. 127, 133, 145 A. 355. The problem before the judges, when removing this cause from the Circuit Court for Worcester County, was solely that of the selection of a new jurisdiction which, so far as could be seen, was likely to be free of the hazard of an unfair prejudiced jury. "The law seems to contemplate a condition of excitement in the immediate community, which has been the witness of an imputed crime, productive of feeling, either of prejudice or partiality, which might hazard a fair and impartial trial." *Price v. State,* 8 Gill, 295, 307. "The object of these provisions, as of all laws, for the removal of causes from one

venue to another, is to secure a fair and impartial trial, and promote the ends of justice by getting rid of the influence of some local prejudice which might operate detrimentally upon the interests or rights of one or other of the parties to the suit." *Cooke v. Cooke,* 41 Md. 362, 366. "The object was to get rid of influence of local prejudice in the community from which the jury to try the case was to come, and thus, as far as practicable, to secure a fair and impartial trial by jury." *Schaible v. Home Ins. Co.,* 132 Md. 680, 683, 105 A. 165, 166. . It was not the problem of keeping order in the town and in the courtroom, or of preventing bodily injury to the accused or his counsel, but the further problem of obtaining a fair impartial jury to decide the case in such an orderly trial. It was not a problem, again, of having it adjudicated as a fact, with certainty, that a trial in one jurisdiction or another would not be fair and impartial, but a problem of the appearance of danger of having a material amount of unfairness and prejudice drawn into the jury box with persons taken from that neighborhood. And we dwell on this distinction because, upon the representations made to this court, there would appear to us to have been confusion on the point in the lower court.

In the opinion of this court, the conditions evidenced by the occurrences recited would leave no latitude for discretion, but would demonstrate that the securing of a fair unprejudiced jury from the county selected as the place for the trial of the charges against this man, and any defenses he may make, is unlikely, and that to attain the object of the Constitution and statutes the cause must be removed for trial to some other portion of the state, on the one shore of the bay or the other, where it appears at least much more likely that the local prejudice may be avoided. That there is, in the section of the state so far selected, such prejudice as forbids attempting a trial there, seems to this court to be manifested by the recited facts of the attacks on the jail at Snow Hill, and the entrances gained, in endeavors to get the man for lynching, the conclusion of the local authorities that he must be taken away from both Worcester and Dorchester Counties

to Baltimore City for safe-keeping while awaiting trial, and that he must be brought to trial with a guard of troops, the opinion of the Attorney General, representing the State in the prosecution here, that the condition of mind of the population of the counties from which a jury would be drawn in the circuit is still such that it makes a fair trial unlikely and requires that trial be had elsewhere, the preparations made for military protection of the accused and his counsel, as described in the copies of official communications laid before this court, as stated, and the final determination of the Governor of the State that extra precautions must be taken hereafter, whenever trial of the man may be held at Cambridge.

As has already been announced, however, the proceeding in this court for reversal of the order for removal at this time must be dismissed.

*Proceeding dismissed.*

ADKINS and SLOAN, JJ., agree that the proceeding in this court should be dismissed, but think the opinion of the court should go no further.

DIGGES, J., agreeing with so much of the opinion as reviews the exercise of the trial court's discretion, disagrees with the dismissal of the proceeding, and thinks the order of the trial court should be reversed.

PARKE, J., dissents on the ground that, in his opinion, neither the record nor any facts of which the court can take judicial cognizance shows an abuse of discretion by the *nisi prius* court.