EUEL LEE *v.* STATE OF MARYLAND.
[No. 46, January Term, 1933.]

*Decided April 6th, 1933.*

The cause was argued before BOND, C. J., URNER, ADKINS, PARKE, and SLOAN, JJ.

*Bernard Ades* and *David Levinson,* for the appellant.

*William L. Henderson, Assistant Attorney General,* and *Godfrey Child, State's Attorney for Worcester County,* with whom were *William Preston Lane, Jr., Attorney General, James C. L. Anderson, State's Attorney for Baltimore County,* and *James A. McAllister, State's Attorney for Dorchester County,* on the brief, for the State.

SLOAN, J., delivered the opinion of the Court.

On September 29th, 1932, Euel Lee, the appellant, was found guilty of murder in the first degree, by a jury in Baltimore County, whence the case had been removed at the instance of the appellant from Worcester County. On October 22nd, 1932, he was sentenced to death, and from this sentence he appeals. The offense for which he was indicted was the murder, on or about the 11th day of October, 1931, of Green Davis at Worcester County. A suggestion for removal was made in the Circuit Court for Worcester County, by the appellant, and that court removed the case to Dorches-

ter County, an order which was later stricken out and an order passed removing the case to Baltimore County (*Lee v. State,* 161 Md. 430, 157 A. 723) where he was tried, on January 20th, 1932, found guilty, and on January 28th, 1932, sentenced to death. From this sentence he appealed on the ground that his rights had been prejudiced because no one of his race had been considered in the selection of the panel from which the petit jury at the December Term, 1931, was drawn, an exclusion which was held to show prejudice, in the opinion by Chief Judge Bond in·*Lee v. State,* 163 Md. 56, 161 A. 2,84, and the case was remanded to the Circuit Court for Baltimore County for a second trial, with a repetition of the first result. The appellant offered no evidence. All of his resistance was to a trial of the case at the September Term, 1932. The appellant reserved thirty-three exceptions to adverse rulings which are appropriately grouped under the three questions heré urged by him as cause for reversal.

The appellant, before proceeding with the trial, first filed a formal motion for a removal to a county "where there are no Jim Crow or segregation regulations against negroes," which was overruled, and abandoned at the argument on appeal. The right had been and can only be exercised once. *Cooke v. Cooke,* 41 Md. 362; *Price v. State,* 8 Gill, 296; *Fountain v. State,* 135 Md. 87, 108 A. 473.

The defendant then moved in writing for a continuance on the ground that certain "Jim Crow" regulations of the County Commissioners of Baltimore County were prejudicial to his rights, that the court bailiffs or other authorities segregated negro spectators and witnesses into a portion of the court room, and that théy "are excluded from the lavatories and toilets, open for use by white people, and are forced to refrain from using such toilets, but on the contrary, are directed, ordered and compelled to use only such toilets as are specifically set aside for use by negroes which fact is publicly announced by placards and signs prominently posted in said court room," and "that in Baltimore County negroes are excluded from hotels, restaurants, theatres, moving pic-

ture houses, etc., visited and patronized by white people, solely on account of their race and color," and that by reason of these facts and circumstances the defendant could not have a fair and impartial trial until such practices and regulations are discontinued.

No authority for such a motion, based on such reasons, was cited by defendant's counsel, the granting of a continuance, in the absence of abuse, resting in the discretion of the court. *Downs v. State,* 111 Md. 241, 73 A. 893; *Newton v. State,* 147 Md. 71, 127 A. 123; *Cumberland & W. Transit Co. v. Metz,* 158 Md. 425, 149 A. 565. In *Aldridge v. United States,* 283 U. S. 308, 314, 51 S. Ct. 470, 473, 75 L. Ed. 1054, 1058, a case relied on by the defendant to support his exceptions taken on the examination of jurors on their *voir dire,* it is said: "The question is not as to the civil privileges of the negro, or as to the dominant sentiment of the community and the general absence of any disqualifying prejudice, but as to the bias of the particular jurors who are to try the accused." White and colored alike are entitled to the equal protection of the laws, yet states have not been denied the right to pass and enforce many segregation statutes. Railways and other means of transportation have been required by states, and lawfully, to provide separate compartments for whites and colored. Innkeepers, in the conduct of their business, are not required to throw their houses open to whomsoever chooses to be their guests. *Hall v. De Cuir,* 95 U. S. 485, 24 L. Ed. 547, 553; *Chiles v. C. & O. R. Co.,* 218 U. S. 71, 30 S. Ct. 667, 54 L. Ed. 936. If the defendant's contention is sound or logical, then so long as this State has separate schools for white and colored children, he could not be brought to trial, for nowhere is the separation more marked than there. Yet it has been frequently held that separate schools do not violate the provisions of the Fourteenth Amendment. *Cumming v. Board of Education of Richmond County,* 175 U. S. 528, 20 S. Ct. 197, 44 L. Ed. 262, and note. In all of the cases the right to make such regulations in public places and institutions is recognized, provided equal advantages and comforts are

afforded both races, and there is no suggestion here that this has not been done. Under these circumstances and in the light of the decisions on the subject, it cannot be said that in refusing the motion for a continuance the trial court abused its discretion.

The next question submitted was to the validity of the panel of two hundred, from which the petit jury for the September Term, 1932, was drawn. At the first trial of the appellant, a challenge was made to the array, because the names of twenty-five petit jurors were drawn from a panel of two hundred from which negroes had been excluded, and it was held on the former appeal (163 Md. 56, 161 A. 284), that this was prejudicial to the rights of the appellant. At the September Term, 1932, the names of six colored men, qualified to sit as jurors, were included in the panel of two hundred, so that there can be no question about this panel meeting the requirements necessary to eliminate prejudice from that drawing.

When the names of two hundred persons taken from the tax and registration lists were placed in the jury box at the September Term, 1932, the term at which the second trial was held, it appears that the names of all except forty-six had been in the panel of two hundred at the December Term, 1931, when the first trial was had, and the contention of the appellant now is that the decision in the former appeal (163 Md. 56, 101 A. 284), disqualified the entire list of two hundred, and therefore disqualified the one hundred and fifty-four prospective jurors whose names went back into the box at the September Term, 1932. It was held in the former appeal that the manner of selecting the jury sufficiently met the requirements of the statutes. *Hollars v. State,* 125 Md. 367, 93 A. 970; Code of Public General Laws, article 51, sec. 6; Code of Public Local Laws, article 3, sec. 387 *et seq.* There was no suggestion in the opinion that any of those whose names were in the panel for the December Term, 1931, were not legally qualified to act as jurors. The decision was that the panel, as a whole, was defective because, in the selection of the two hundred per-

sons whose names went into the box, negroes were excluded, and that this exclusion had been so persistent as to amount to discrimination, and therefore prejudice.

If the names of negroes, legally qualified, had been placed in the list from which the jury at that term had been drawn, the decision in the last appeal would have been an affirmance instead of a reversal. The panel was held to be bad, but the individuals whose names were in the list from which the jury was drawn were not, merely because their names were in that list, thereafter disqualified to be drawn so long as they individually possessed the necessary qualifications. Two terms of court with two jury drawings, March and May, 1932, had intervened between the first and second trials, so that there were in the box the names of those who had not been drawn the two, and many of them more, terms before. The names in the box at the September Term, 1932, which had also been there, and not drawn at the December Term, 1931, were those of qualified jurors, whose qualifications had been considered and determined by the court, and their inclusion in the new list was simply using the names of qualified jurors for a new and different list and, because again considered and selected, was a fresh and new selection for the panel in question. If there had been an attempt at the December Term, 1931, after the drawing of the petit jury for that term, to correct the mistakes made in the composition of the panel, there might have been some point to the contention. When the drawing occurs at a subsequent term, the objections to the list of a former term avail nothing if the names of those in the box at the subsequent term are of persons qualified individually and collectively to serve as jurors. 35 *C. J.* 267, 268; *State v. Welch,* 36 W. Va. 690, 15 S. E. 419.

The second point raised in the challenge to the array was as to the identity of Edgar Keifer, one of the jurors accepted, but this was abandoned at the argument.

The third question argued was on the exceptions to the refusal of the court to allow certain questions to be asked jurors on their *voir dire.*

The question "Do you regard negroes as your social equal," was not permitted to be asked Henry H. Grimes, John G. Mays, Gordon H. Pearce, and Daniel J. Edell, and substantially the same of Joseph F. Nee, all of whom were challenged by the defense, except Grimes. It has been held that a white juror is not disqualified to sit in a case against a negro because he thinks his race superior to another, or does not believe in the social equality of white and colored races. *State v. Casey,* 44 La. Ann. 969, 11 So. 583; *State v. Green,* 229 Mo. 642, 129 S. W. 700.

The question was asked William A. Freeman: "Do you have feeling against colored people?" which he answered, "No." He was then asked: "Would you believe a colored man's story just as quickly as a white man's?" which was objected to by the State, objection sustained, and exception noted. The same question and same ruling as to Daniel J. Edell, J. Howard Anderson and Joseph F. Nee. This question was refused by the trial court as being "too general," and in that we concur. The question held proper in *Hill v. State,* 112 Miss. 260, 72 So. 1003, quoted in *Aldridge v. United States,* 283 U. S. 308, 312, 51 S. Ct. 470, 75 L. Ed. 1054, was: "Have you got any prejudice against the negro, as a negro, that would induce you to return a verdict on less or slighter evidence than you would return a verdict of guilty against a white man under the same circumstances?" Practically the same question, with the qualifications "other things being equal" and "under the same circumstances," was held proper in *People v. Car Soy,* 57 Cal. 102. There is a vast difference between this and and the question: "Would you believe a colored man's story just as quickly as a white man's." Credibility does not depend on the color of the witness, and a juror may disbelieve a witness no matter what his race. Credibility depends on circumstances, which may arise at the trial, and the question here, as in the *Hill* case, should have been so qualified, especially after all four jurors had stated they had no "feeling against colored people." The question as asked has been held to be an improper test. *Jenkins v. State,* 31 Fla. 196, 12 So. 677;

*State v. Dyer,* 154 La. 379, 97 So. 563; *State v. Buford,* 158 Iowa, 173, 139 N. W. 464; *State v. Bethune,* 93 S. C. 195, 75 S. E. 281; *Cavitt v. State,* 15 Tex. App. 190. See note, 73 *A. L. R.* 1209. Compare the question here asked with the one ruled on in the *Pinder* case, 27 Fla. 370, 8 So. 837, 838: "Could you give the defendant, who is a negro, as fair and impartial a trial as you could a white man, and give him the same advantage and protection as you would a white man upon the same evidence?" and, this is all the traverser, white or colored, is entitled to receive, a jury, legally qualified, without bias or prejudice. The purpose of the examination is to ascertain, as nearly as may be learned from a juror's answers, whether he is so free of bias or prejudice as to give the one to be tried a fair trial, and it is the duty of the court to furnish him such jurors. "The examination which the party is thus entitled to have made is only a means to the end of ascertaining the existence of cause for disqualification, and is not permitted for any other purpose." *State v. Welsh,* 160 Md. 542, 154 A. 51; *Whittemore v. State,* 151 Md. 309, 315, 134 A. 322. So far as this record discloses, the appellant was furnished a jury ascertained from their examination to be qualified to give him a fair trial, which was all he had a right to ask.

The court refused to allow one juror to be asked whether he had noticed the lavatory signs, one, if he knew of the exclusion of negroes from moving picture houses, and one, if he knew of the "Jim Crow practices in Baltimore County." We have already said enough on this subject to indicate that such questions are not a test of fitness of a juror.

Exceptions twenty-three to thirty-three, both inclusive, to rulings on the evidence, were abandoned at the argument, and are, therefore, not considered.

Finding no error in the rulings of the trial court on the challenge to the panel of two hundred from which the petit jury was drawn, on the motion for a continuance, and on the examination of the jurors on their *voir dire,* the judgment appealed from should be affirmed.

*Judgment affirmed, with costs.*