Barbara Luella **RIVERS**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 16175.

United States Court of Appeals
Ninth Circuit.

Sept. 9, 1959.

Warren C. Christianson, Sitka, Alaska,
Albert White, Juneau, Alaska, Lawrence
Speiser, San Francisco, Cal., for appel-
lant.

Roger G. Connor, U. S. Atty., Jerome
A. Moore, Juneau, Alaska, for appellee.

Before POPE, CHAMBERS and HAMLEY, Circuit Judges.

POPE, Circuit Judge.

The appellant was convicted of murder in the first degree after trial in the District Court for the Territory of Alaska, First Division. She was sentenced to life imprisonment.

At the time of the alleged homicide, the appellant and her husband, Paul Rivers, were living at the Alaskan Hotel at Sitka. Some time during the night of December 3, 1957, Paul Rivers died or was killed. Late on the evening of December 5, the Sitka police received a telephone call from some then unidentified woman who reported that a man had been murdered at the hotel and his body dismembered and that portions of the body were scattered on the beach. The informant declined to identify herself but it afterwards appeared that it was the defendant-appellant.

On receipt of the call the police investigated and found Paul Rivers' dismembered body, portions of it in the sea approximately one-half mile from the hotel, and portions upon the beach near the hotel. The head, upper torso, pelvis, arms and legs had apparently been thrown into the sea; the fingertips, toes, nose, lips, eyebrows and scalp were found at various places on the beach. Further investigation led to the apprehension of the defendant, and her indictment and conviction followed.

■ Numerous specifications of error are presented in two separate briefs by different attorneys representing the appellant. Although it is asserted in one of the briefs that the verdict is not supported by the evidence, it is plain to us that an abundance of evidence warranted the conviction. We have examined all of the specifications and find that but three of them merit consideration and these we here proceed to discuss.

■ During the course of the voir dire examination, counsel for the defendant asked a prospective juror: "Would you object to a Negro living in an apartment next to yours?" The court ruled the question improper. Because the defendant and her husband were Negroes appellant now contends that this ruling of the court was erroneous and prejudicial; that her counsel should have been permitted to make such an inquiry in an effort to ascertain the attitude of the jurors toward a Negro defendant.

Appellant relies on Aldridge v. United States, 283 U.S. 308, 314, 51 S.Ct. 470, 75 L.Ed. 1054, where a Negro on trial for the murder of a white man was held to be entitled to have jurors asked on voir dire whether they had any racial prejudice that would prevent a fair and impartial verdict.

For several reasons it cannot be said here that the trial court abused its discretion in refusing to allow this question to be asked. In the first place, nothing is shown in the record as to what other questions were asked on the voir dire examination, or whether this was the first question asked relating to the juror's attitude toward Negroes. Apparently this is only one of a series of questions on the subject for one of appellant's briefs states: "The court erred in not allowing the counsel for the defense to *further* question the prospective jurors concerning possible race prejudice." (Emphasis added.) This would indicate that other questions along this line had been allowed. Furthermore, the question, as framed, was not germane to the question whether the juror in acting in the case would have such racial prejudice as to prevent or make difficult a fair or impartial verdict. Whether the juror would object to living in an apartment next door to a Negro is an entirely different question.[1] We find no error in the ruling of the court on this point.

In a series of specifications of error appellant asserts that the court erred in admitting in evidence, over the objections of the defense, certain exhibits consist-

---

1. See Lee v. State, 164 Md. 550, 165 A. 614, 617, where a question whether a juror regarded Negroes as his social equal was held properly excluded.

ing of parts, or photographs of parts of the dismembered portions of the body of the deceased man. Thus finger tips and toe which were found near the hotel and pieces of flesh and hair found beneath the window of the room occupied by Rivers and his wife were offered and received. A number of photographs of the body of the deceased taken at the morgue disclosing the manner in which the portions of the body had been cut up were also received in evidence over the objection of the defense.

■ These objections were made upon the ground that this evidence was so gruesome and horrifying that it would inflame and excite the jurors and prejudice them against the defendant to such an extent as to deprive the defendant of a fair trial. The argument is that the dismemberment of the body was admitted by counsel for the defense at and during the trial; that death was not caused by any cutting or dismemberment of the body (the Government's case disclosed that death was the result of asphyxiation); therefore the dismemberment must have followed the death, and the evidence of cutting and dismemberment, it is said, proves nothing as to the cause of death or the circumstances of the crime itself.

The defendant's account of how the death occurred was that Rivers had been drinking heavily on the afternoon and night of December 3; during that time, as he had done previously, Rivers was threatening to kill the defendant, and during the evening he beat her, and was otherwise abusive toward her. She said that finally he took some sleeping pills and fell asleep in his bed; that she, fearing that he might get up and attack her, tied a string around his neck and attached the string to the head of the bed, and then she herself took a sleeping pill and laid down on the bed beside him and went to sleep. She said that when she woke in the morning she thought he was still asleep and did not discover that he was dead until she tried to wake him. Asked why she did not report to the police, she said she was afraid she would be charged with killing him, and in a panic undertook to hide the fact of his death by dismembering the body and attempting to conceal it. The evidence was that she used a cleaver for this purpose. The cleaver was found where she later reported she had thrown it.

Appellant argues that the only possible purpose for the introduction of all this evidence was to excite and inflame the jury, and that it had no probative value because the fact of the dismemberment was not in issue.

■ The courts have frequently had occasion to deal with contentions of this kind, most of them arising in cases of homicide.[2] A good statement of the rule commonly accepted is found in People v. Chavez, 50 Cal.2d 778, 329 P.2d 907, 916, as follows: "Such photographs should be excluded where their principal effect would be to inflame the jurors against the defendant because of the horror of the crime; on the other hand, if they have a probative value with respect to a fact in issue that outweighs the danger of prejudice to the defendant, they are admissible, and the resolution of this question is primarily for the trial court in the exercise of its discretion."

This court, in a case on appeal from the Territory of Alaska, approved the action of the lower court in admitting similar photographs, applying substantially the same rule set forth in the California case cited. Eagleston v. United States, 9 Cir., 172 F.2d 194, 200. We held that the trial court did not abuse its discretion in permitting the jury to see the pictures, and that this court could not say that any prejudicial effect therefrom outweighed their probative value. See also, Fuller v. United States, 9 Cir., 170 F.2d 515, 516.

2. See the collection of cases contained in an annotation entitled "Admissibility of photograph of corpse in prosecution for homicide or civil action for causing death," 159 A.L.R. at page 1413, et seq.

In the recent case of State v. Griffith, 52 Wash.2d 721, 328 P.2d 897, 900, the court answered a contention similar to the one made by this appellant by noting that "Pictures that accurately represent the true state of the thing depicted are admissible if they have probative value upon some element of the crime charged." After finding that the pictures in evidence there had a probative value both to disclose the means of the killing and the existence of the intent on the part of the defendant, the court said: "Competent evidence is not prejudical just because it is gruesome. * * * The admission or rejection of photographs lies largely in the sound discretion of the trial court, and in the absence of a showing of abuse of discretion, the trial court's ruling will not be disturbed on appeal."

■ It is well settled that the conduct of an accused person following the commission of an alleged crime may be circumstantially relevant to prove both the commission of the acts charged to the accused and the intent and purpose with which those acts were committed. Among such acts are flight of the accused and concealment of the results of the crime. Allen v. United States, 164 U.S. 492, 499, 17 S.Ct. 154, 41 L.Ed. 528; Bird v. United States, 187 U.S. 118, 131, 23 S.Ct. 42, 47 L.Ed. 100; Strom v. United States, 9 Cir., 50 F.2d 547, 548. Cf. Lutch v. United States, 9 Cir., 73 F.2d 840, 841, and United States v. Heitner, 2 Cir., 149 F.2d 105, 107. It is plain that the jury could well infer from the evidence in this case that the dismemberment of the body and the throwing of the portions into the sea were done to conceal a murder or to avoid its detection. This would be particularly true of the acts disposing of the finger tips. Such an act would serve the purpose of avoiding identification of the body. Since the photographs would tend to disclose just how the dismemberment was accomplished, examination of the photographs would give some enlightenment as to the defendant's probable state of mind and purpose in performing these acts,—whether it was done wildly, or in a calculated manner. These considerations disclose the relevancy and probative value of this portion of the evidence.

Of course appellant might argue that the dismemberment was as corroborative of her story of panic on discovery of an accidental death, but we must recall that it was the function of the jury to determine whether they believed such story. The mode and thoroughness of the dismemberment would have significance and relevance in permitting the jury to weigh the credibility of the story which the defendant told on the stand; and to decide under all the circumstances whether the effort to conceal a murder was not the more probable answer as to the purpose of dismemberment.[3]

The contention of the appellant that all of these circumstances which we have just mentioned were never in controversy but were stipulated or admitted is not borne out by the record. The identity of the body and the fact that it was dismembered was admitted by the defense; but the manner, mode and purpose of dismemberment were never admitted or stipulated. Accordingly, for the reasons indicated, we hold that the trial court did not abuse its discretion in admitting these photographs and those portions of the body in evidence.

If the mere gruesomeness of the evidence were ground for its exclusion, then it would have to be said that the more gruesome the crime, the greater the difficulty of the prosecution in proving its case. In State v. Long, 195 Or. 81, 244

---

**3.** "On the logical principle of *Explanation* * * * the accused may always endeavor to destroy the guilty significance of his conduct by facts which indicate it to be equally or more consistent with such other hypothesis than that of a consciousness of guilt. * * * Such attempts at explanation are sometimes declared improper; but the general and sounder tendency is to admit them freely, leaving to the jury to pass upon their plausibility." Wigmore, Evidence, 3d ed., Vol. II, § 276, pp. 117–118.

P.2d 1033, 1052, the court said: "The persistent assertion in criminal cases that the jury should not be permitted the benefit of relevant evidence because it is thought to be 'gruesome' constitutes, in effect, an attack upon the entire jury system. If a jury is incapable of performing its function without being improperly influenced by evidence having probative force, then the jury system is a failure. It is not a failure. Long experience convinces us of the ability and willingness of citizens called for jury duty to perform that duty with fidelity."

■ It is contended that the court erred in giving its instruction No. 12 relating to the defense of insanity. That instruction was as follows: "Every person is presumed to be of sound memory and discretion, and this presumption must be given effect by you until the contrary is shown or until after a consideration of all the evidence you have a reasonable doubt as to the defendant's sanity."

Counsel for the defendant stated their objection to that instruction as follows: "Objection as to instruction No. 12 that when evidence of insanity is put into issue, it is up to the prosecution to prove sanity." Appellant contends that the instruction as given is misleading in that it uses the words "until the contrary is shown" which would tend to create the impression that in this case the burden of proving insanity was upon the defendant. The appellant's argument proceeds as follows: "If the Court had instructed the jury that the presumption would exist until the jury had a reasonable doubt as to the defendant's sanity upon the basis of all the evidence, the Court would have been acting consistently with the stand-

ard set up in the case of Davis v. United States, 160 U.S. 469, 488 [16 S.Ct. 353, 358, 40 L.Ed. 499], * * *. There the Court said, 'If the whole evidence, including that supplied by the presumption of sanity, does not exclude beyond reasonable doubt the hypothesis of insanity, of which some proof is adduced, the accused is entitled to an acquittal of the specific offense charged. His guilt cannot be said to have been proved beyond a reasonable doubt—his will and his acts cannot be held to have joined in perpetrating the murder charged—if the jury, upon all the evidence, have a reasonable doubt whether he was legally capable of committing crime * * *.' "

The rule stated in the Davis case, cited by defendant in the above quotation must be taken to be the rule properly to be applied in this case where there was some evidence of insanity. In Matheson v. United States, 227 U.S. 540, 543, 33 S.Ct. 355, 356, 57 L.Ed. 631, the Supreme Court had occasion to discuss the question of the burden of proof of insanity in a homicide case arising in Alaska. It approved an instruction there given upon the ground that it was in accord with the rule stated in the Davis case, supra.[4]

■ The rule was again stated when the Davis case came before the Supreme Court the second time, 165 U.S. 373, 378, 17 S.Ct. 360, 362, 41 L.Ed. 750, as follows: "[W]hile it was true that every man is presumed to be sane, yet whenever by the testimony the question of insanity is raised, then the fact of sanity, as any other essential fact in the case, must be established to the satisfaction of the jury beyond a reasonable doubt." The result of this rule is that once some evidence

---

**4.** Actually the instruction there given varied in some respects from the precise statement of the rule found in the Davis case. In the Matheson case the Court states: "He instructed the jury that while the burden of proof was upon the defendant to establish the fact that he was insane at the time of the killing, yet they could not convict if they had a reasonable doubt as to his sanity." That statement of the rule has caused some

trouble in the lower courts. See United States v. Harris, 8 Alaska 164, 166, and De Groot v. United States, 9 Cir., 78 F.2d 244, 252. There is no indication that the Supreme Court would regard its Matheson decision as stating a rule for Alaska differing from that laid down in the Davis case. Quite the contrary,— see Leland v. State of Oregon, 343 U.S. 790, 797, footnote 16, 72 S.Ct. 1002, 96 L.Ed. 1302.

tending to show the accused is insane has been introduced by either side, the jury cannot convict if they have a reasonable doubt that the accused is sane.

When we analyze the instruction here under attack we find that the court stated that the presumption of sanity prevails "until the contrary is shown *or* until * * * you have a reasonable doubt as to the defendant's sanity." (Emphasis ours.) It is apparent that by inserting the words "until the contrary is shown" the court detracted in some degree from an otherwise appropriate instruction to the effect that conviction could not be had if "you have a reasonable doubt as to the defendant's sanity." However, when all of the instructions are read together a different picture of this instruction emerges. In instruction No. 1 the jury were told to consider the instructions as a whole and not to single out one instruction alone as stating the law. In instruction No. 4 the court stated that the prosecution had the burden of proving the defendant guilty of every essential element of the crime beyond a reasonable doubt. Instruction No. 8 stated that soundness of memory and discretion was essential to the crime of first degree murder; and concluded, "if you find from the evidence beyond a reasonable doubt (1) that the defendant on or about the time and place charged in the indictment killed Paul Rivers, and (2) that she was then and there of sound memory and discretion, and (3) that such killing was done purposely and with deliberate and premeditated malice, you should find her guilty of murder in the first degree." The same instruction defined the words "sound memory and discretion" as meaning being sane, and it defined the crime of murder in the first degree, as follows: "You are instructed that whoever, being of sound memory and discretion, purposely and with deliberate and premeditated malice, kills another is guilty of murder in the first degree."

We do not overlook the importance in cases of this character of proper advice to the jury as to their duty with respect to how they should weigh evidence relating to insanity. The issue was definitely in the case and a fair trial required that the jury be properly instructed to the effect that since there was some evidence raising the question of insanity they must find the defendant sane beyond a reasonable doubt. We are of the opinion that the instructions taken as a whole did so inform the jury, and we do not think the jury was misled. Cf. Legatos v. United States, 9 Cir., 222 F.2d 678, 687–688; Bateman v. United States, 9 Cir., 212 F.2d 61, 69. Taken as a whole the instructions were as fully in line with the rule in the Davis case as was the language which the Supreme Court approved in Matheson v. United States, supra.[5]

Since we find no prejudicial error in the record,[6] the judgment is affirmed.

5. A number of cases dealing with instructions on the burden of proof of sanity or insanity of a defendant charged with murder in which objectionable or questionable portions of instructions were held not to be erroneous or prejudicial in view of other instructions, or of the instructions as a whole, are collected in an annotation found at 120 A.L.R. 608–610. A similar case is State v. Green, 86 Utah 192, 40 P.2d 961, 965, where the court said: "While not so expressed, that part of instruction No. 15 just quoted, standing alone, is somewhat suggestive of the idea that the presumption of sanity is evidence of sanity, a doctrine which was disapproved on the former appeal. However, in light of the clear and correct statement of the law in the concluding paragraph of the instruction now under review, we are unable to perceive how the jury could have been misled by the objectionable language contained in the first paragraph of that instruction. The only meaning which can be gathered from the instruction, when considered as a whole, is that the defendant was entitled to an acquittal if the jury, from a consideration of all of the evidence, should entertain a reasonable doubt as to his sanity."

6. Other rulings of which appellant complains include the refusal of the court to allow other witnesses to testify to past assaults made by Rivers on the defendant. From the facts there could be no

question of self-defense in the case, and proof of deceased's character would be improper, particularly if attempted through proof of specific acts of miscon- conduct. Some matters argued are not covered by specifications; such are con- tentions concerning a so-called confession, and an alleged illegal search. Neverthe- less we have examined these arguments and find them devoid of merit.