## HESLOP *v.* STATE

[ No. 109, October Term, 1952.]

*Decided April 15, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Joseph A. DePaul*, with whom was *Ignatius J. Keane* on the brief, for the appellant.

*Kenneth C. Proctor, Assistant Attorney General*, with whom were *Edward D. E. Rollins, Attorney General*, and *C. J. Lancaster, State's Attorney for Prince George's County*, on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Byron Eugene Heslop is attacking here a conviction against him by the Circuit Court for Prince George's County on the ground that the Court disregarded the statute permitting removal of any criminal case punishable by imprisonment in the Maryland Penitentiary. Laws 1952, ch. 69.

Appellant was arraigned on October 14, 1952, on an indictment charging robbery, assault with intent to rob, assault and battery, larceny, and receiving stolen goods. He pleaded not guilty to all five charges. On October 20 he requested removal of his case. The Court, holding the Act of 1952 unconstitutional, overruled his motion. His attorney stated that an appeal from that ruling would be taken immediately, but the Court replied that an appeal could not be taken until after final judgment. The attorney then stated that, as he had assumed the Act to be valid and accordingly had no doubt that the case would be removed, he was not ready for trial. The Court thereupon postponed the case for two days.

On October 22 a jury found appellant guilty on the second count (assault with intent to rob), guilty on the third count (assault and battery), and not guilty on the first, fourth and fifth counts. On October 29 the Court sentenced him to the Maryland House of Correction for

a term of three years. He then entered his appeal to this Court.

We reaffirm the rule that refusal to grant a removal of a case where the Constitution gives an absolute right of removal, as it does in capital cases, amounts to a final judgment on a constitutional right and is immediately reviewable by the Court of Appeals; but only rulings on claims of absolute constitutional right are immediately reviewable, since orders within the discretion of the trial court are not final orders and are therefore not immediately reviewable, if reviewable at all. *Lee v. State*, 161 Md. 430, 433, 157 A. 723. In the case at bar appellant did not appeal from the Court's ruling refusing a removal. The appeal comes here from the final judgment. It is, therefore, not necessary for us to decide whether the refusal to grant a removal was immediately reviewable.

From ancient times the power of a court to grant a change of venue has been recognized by the common law of England as a means of promoting justice by getting rid of local prejudices which might be supposed to operate detrimentally to the rights or interests of a party litigant if the case were tried in the county of the venue. In the United States it has been held that this power is inherent in the courts without reliance upon constitutional or statutory authority. *State v. Dashiell*, 6 Har. & J., Md., 268; *Price v. State,* 8 Gill, Md., 295; *Jerry v. Townshend,* 2 Md. 274, 278; *Crocker v. Justices of Superior Court,* 208 Mass. 162, 94 N. E. 369; *State v. Albee,* 61 N. H. 423, 60 Am. Rep. 325, 327; *Barry v. Truax,* 13 N. D. 131, 99 N. W. 769, 65 L. R. A. 762.

In Maryland the right of removal has been considered so essential to the administration of justice that it has been incorporated in the organic law of the State for nearly a century and a half. In January, 1805, the Legislature passed an Act proposing an Amendment to the Constitution of 1776 to reorganize the Judicial Department of the State by re-establishing the Court of

Appeals, abolishing the General Court of Maryland, and dividing the State into six judicial districts. Laws 1804, ch. 55. That Act, which was confirmed at the next session of the Legislature January 25, 1806, Laws 1805, ch. 16, and thus became a part of the Constitution, contained the following provision:

"That if any party presented or indicted in any of the County Courts of this State, shall suggest in writing to the Court in which such prosecution is depending that a fair and impartial trial cannot be had in such Court, it shall and may be lawful for the said Court to order and direct the record of their proceedings in the said prosecution to be transmitted to the Judges of any adjoining County Court for trial and the Judges of such adjoining County Court shall hear and determine the same in the same manner as if such prosecution had been originally instituted therein; provided that such further and other remedy may be provided by Law in the premises as the Legislature may direct and enact."

The Constitutional Convention of 1851 modified this basic law by eliminating the Court's discretionary power and giving the right of removal to the defendant in every criminal case. The 1851 Constitution provided in Article 4, Section 28, that the court, upon suggestion that a fair and impartial trial cannot be had therein, shall order and direct the record of proceedings to be transmitted to the court of any adjoining county; provided that the removal in all civil causes be confined to an adjoining county within the judicial circuit, except as to the city of Baltimore, where the removal may be to an adjoining county.

The Convention of 1864 heard that the unlimited right of removal had been grossly abused. It was reported that there had been many instances in which removal had caused long postponement of trial and in addition had caused waste of time and money because

the witnesses were compelled to travel to some other county seat, when actually the party who applied for the removal could have had a fair and impartial trial in the court where the case originated. Debates, Md. Constitutional Convention of 1864, 1403-1405. Accordingly the members of the Convention decided to return the power of removal to the court's discretion. They wrote in Article 4, Section 9, of the 1864 Constitution that the court shall order the record in any action to be transmitted to some other court in the same or any adjoining circuit whenever any party to such cause, or the counsel of any party, "shall make it satisfactorily appear to the court that such party cannot have a fair and impartial trial in the court."

The Convention of 1867 changed the rule again by making it mandatory upon the court to order removal upon the suggestion of any party that he could not have a fair and impartial trial in that court. The Constitution, as adopted by that Convention provided in Article 4, Section 8, as follows:

"The parties to any cause may submit the same to the Court for determination, without the aid of a jury; and the Judge, or Judges of any Court of this State, except the Court of Appeals, shall order and direct the Record of proceedings in any suit, or action, issue or petition, presentment or indictment, pending in such Court, to be transmitted to some other Court, (and of a different Circuit, if the party applying shall so elect,) having jurisdiction in such cases, whenever any party to such cause, or the counsel of any party, shall make a suggestion, in writing, supported by the affidavit of such party, or his counsel, or other proper evidence, that the party cannot have a fair or impartial trial in the Court in which such suit, or action, issue or petition, presentment or indictment is pending * * *; and the General Assembly shall make such modifications of existing Law as

may be necessary to regulate and give force to this provision."

In 1874 the Legislature, hearing reports of abuse of the unlimited privilege of removal, proposed an Amendment to the 1867 Constitution to confine the mandatory removal of criminal cases to those cases in which the crimes are punishable by death. Laws 1874, ch. 364. The Legislature proposed to amend Article 4, Section 8, as follows:

"The parties to any cause may submit the same to the court for determination without the aid of a jury, and in all suits or actions at law, issues from the orphans' court, or from any court sitting in equity, and in all cases of presentments or indictments for offences, which are or may be punishable by death, pending in any of the courts of law of this State, having jurisdiction thereof, upon suggestion in writing under oath of either of the parties to said proceedings, that such party cannot have a fair and impartial trial in the court in which the same may be pending, the said court shall order and direct the record of proceedings in such suit or action, issue, presentment or indictment, to be transmitted to some other court having jurisdiction in such case for trial; but in all other cases of presentment or indictment pending in any of the courts of law in this State, having jurisdiction thereof, in addition to the suggestion in writing of either of the parties to such presentment or indictment, that such party cannot have a fair and impartial trial in the court in which the same may be pending, it shall be necessary for the party making such suggestion to make it satisfactorily appear to the court that such suggestion is true, or that there is reasonable ground for the same; * * * and the General Assembly shall make such modifica-

tion of existing law as may be necessary to
regulate and give force to this provision."

This Amendment was ratified by the voters of Mary-
land at the election in November, 1875. Thus the organic
law of the State now explicitly directs: (1) that in
any case punishable by death the defendant has the right
of removal when he files a suggestion under oath that
he cannot have a fair and impartial trial; and (2) that
in any case not punishable by death the defendant has
the right of removal when, in addition to the suggestion,
he makes it satisfactorily appear to the Court that such
suggestion is true, or that there is reasonable ground
for the same.

In other States the Legislatures have frequently en-
acted legislation for change of venue designed to secure
fair and impartial trials at such places as are most con-
venient for the litigants and their witnesses. Generally,
such statutory regulations are within the sound discre-
tion of the Legislature, provided that they do not conflict
with any provisions of the State Constitution. In 1806
the Maryland Legislature, in the Act for the reorganiza-
tion of the Courts of Common Law of the State, enacted
its first legislation implementing the venue clause of the
Constitution. Laws 1805, ch. 65, sec. 49. Since that
time the Legislature has enacted a number of statutes
for the regulation of removal of causes.

It is accepted that the Court should not strike down
a statute as unconstitutional unless it violates the Con-
stitution unmistakably. *City of Baltimore v. State ex rel.
Board of Police of City of Baltimore,* 15 Md. 376, 453, 74
Am. Dec. 572; *Fell v. State,* 42 Md. 71, 89, 20 Am. Rep.
83; *Hiss v. Baltimore & Hampden Passenger Ry. Co.,*
52 Md. 242, 252, 36 Am. Rep. 371; *Stiefel v. Maryland
Institution for Instruction of Blind,* 61 Md. 144, 148.
Consequently, where there is any doubt of the validity
of a statute, the Court will resolve the doubt in favor
of the interpretation that will reconcile it with lawful
limitations of legislative power. Nevertheless, the Court
will not hesitate to invalidate any enactment that amounts

to an unlawful assumption of power granted to either the Executive or the Judicial Department.

Appellant cited *Hoyer v. Colton,* 43 Md. 421, 423, and *Downs v. State,* 111 Md. 241, 246, 73 A. 893. He put reliance on a statement in those opinions that the Legislature has the power to enlarge, but not to restrain, the right of removal. That statement is subject, of course, to the qualification that any statute which conflicts with the Constitution is void. This is the fundamental doctrine which was proclaimed by Chief Justice Marshall in *Marbury v. Madison,* 1 Cranch 137, 2 L. Ed. 60, 73, 74. In that decision the Chief Justice said: "Certainly all those who have framed written constitutions contemplate them as forming the fundamental and paramount law of the nation, and, consequently, the theory of every such government must be, that an act of the legislature, repugnant to the constitution, is void. * * * It is emphatically the province and duty of the judicial department to say what the law is. * * * So if a law be in opposition to the constitution; * * * the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty."

While that fundamental principle was not mentioned in either of the cases cited by appellant, the Court did allude to it in the earlier case of *Griffin v. Leslie,* 20 Md. 15, 19, where a statute authorizing entry of judgments in certain cases was held not to be in conflict with the Constitution. In discussing that statute Chief Judge Bowie said: "It must be construed so as to harmonize with the Constitution, or if not susceptible of such construction, must yield to its superior force."

The Debates in the Maryland Constitutional Conventions and the seesaw changes in the venue clause of the successive Constitutions conclusively show that the framers gave careful consideration to the problem of how much power the Court should have in allowing change of venue; and in each Convention they reached a decision which could be changed only by Constitutional Amendment. In addition, the members of the Legis-

lature themselves understood this in 1874, for when they enacted a measure for absolute right of removal in capital cases, they framed it as a Constitutional Amendment and submitted it to the voters of the State.

Since the Constitution, as it stands today under the Amendment, explicitly provides that in all criminal cases not punishable by death, the party applying for a removal must make it satisfactorily appear to the Court that such party cannot have a fair and impartial trial in that Court, or that there is reasonable ground for that suggestion, we hold that the Legislature cannot provide for absolute right of removal in cases punishable by imprisonment in the penitentiary, except by Constitutional Amendment. This view is strengthened by the difference between the language of the concluding sentence of the first Constitutional Amendment, confirmed in 1806, and the language of the concluding sentence of the present Constitutional Amendment, ratified in 1875. The first Amendment authorized the enactment of "such further and other remedy * * * as the Legislature may direct and enact." The present Amendment authorizes the Legislature to make only "such modification of existing law as may be necessary to regulate and give force to this provision." Therefore, since Chapter 69 of the Laws of 1952 is not a Constitutional Amendment, we declare it invalid.

Appellant did not offer to show that his suggestion that he could not have a fair and impartial trial was true, or that there was reasonable ground for that suggestion. We, therefore, hold that the Court's order overruling his motion was correct.

*Judgment affirmed, with costs.*