**William WALKER, Jr., Appellee,**

v.

**Franklin K. BROUGH, Warden, Maryland Penitentiary, Appellant.**

**No. 10291.**

United States Court of Appeals Fourth Circuit.

Argued Feb. 7, 1966.

Decided Oct. 19, 1966.

David T. Mason, Asst. Atty. Gen. of Maryland (Thomas B. Finan, Atty. Gen. of Maryland, on brief), for appellant.

Robert James Gerstung, Baltimore, Md. (Court-assigned counsel), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF, BOREMAN, BRYAN and J. SPENCER BELL, Circuit Judges, sitting en banc.

BOREMAN, Circuit Judge.

William Walker is now serving a life sentence in the Maryland Penitentiary having been convicted of murder in the first degree in the criminal court of Baltimore on September 21, 1956, by the judge, sitting without a jury.

Walker filed his petition for a writ of habeas corpus and, after a hearing, the United States District Court for the District of Maryland ordered that he be released unless the State should retry him within a reasonable time. His custodian, the prison warden, prosecutes this appeal. We think the judgment below should be affirmed.

Walker's right to resort to the federal court is not contested. He, however, raises a liminal question of our jurisdiction to entertain the appeal because of the refusal of the District Court to grant the appellant a certificate of probable cause, 28 U.S.C. § 2253. Whether it is required of the State need not be decided, for we now grant the certificate. House v. Mayo, 324 U.S. 42, 65 S.Ct. 517, 89 L. Ed. 739 (1945) (per curiam).

The District Court held that Walker's constitutional right to the effective assistance of counsel at his trial had been violated. Facts from which stem the allegations of the petition and which provide the basis of the decision below are briefly stated.

Walker was arraigned in the Baltimore court on June 7, 1956. He was first interrogated by the clerk in open court. After the prisoner had twice stated, in response to direct questions, that his plea was "guilty" the court intervened and the proceedings continued.[1] Thus, it will be seen that the clerk was permitted to interrogate the prisoner, who was charged with a capital offense, who had made known the fact that he had no attorney, and who stood alone at the bar of the court, until he twice admitted that he was guilty of the offense charged in the indictment. It was then that the court directed that the plea be stricken and that a plea of not guilty be entered. The court observed—"I suppose counsel ought to be appointed"—and the State's attorney responded "Yes, sir." An attorney present in the courtroom was requested by the

---

1. (The Clerk) William Walker, Jr. Walker, have you received a copy of this indictment charging you with murder?
(Mr. Walker) Yes, sir.
(The Clerk) Do you have a lawyer?
(Mr. Walker) No, sir.
(The Clerk) What is your age?
(Mr. Walker) 31.
(The Clerk) 31.
Now, listen carefully, in Indictment No. 2035, the State of Maryland charges you with murder. [The clerk then read the indictment to Walker and followed with this question] William Walker, Jr., how do you plead, guilty or not guilty?
(Mr. Walker) Guilty.
(The Clerk) What is the plea?
(Mr. Walker) Guilty.
(The Court) Strike it out and enter a plea of not guilty. Do you have any counsel?
(Mr. Walker) No, sir.
(The Court) Do you have any money to employ counsel?
(Mr. Walker) No, sir.

(The Court) How old are you?
(Mr. Walker) 31.
(The Court) Do you live here in Baltimore?
(Mr. Walker) Yes, sir.
(The Court) Are your people able to help you?
(Mr. Walker) My sister has been trying to get in touch with some of her people up in Philadelphia.
(The Court) I suppose counsel ought to be appointed.
(Mr. Murphy) [representing the State] Yes, sir.
(The Court) Mr. .........., you want a client?
(Mr. ..........) I have got enough now causing these bags under my eyes.
(The Court) He pleaded guilty to a murder charge and struck it out and entered a plea of not guilty.
(Mr. ..........) Sounds like he needs a priest not a lawyer?
(The Court) Will you handle it?
(Mr. ..........) Yes, sir.

court to represent the prisoner and, after the court had explained that Walker had "pleaded guilty to a murder charge" but that the plea had been stricken and a plea of "not guilty" entered, the attorney informed the court of his impression of the case by glibly stating—"Sounds like he needs a priest not a lawyer." In effect, the attorney told the judge that in his opinion Walker was already on his way to the death house because of his admission of guilt.

For reasons not appearing of record, and admittedly immaterial, another attorney was substituted for the one first appointed. The second attorney, who represented Walker at trial, had not been present at the arraignment and was not informed by the court, the clerk, the accused or anyone of Walker's two pleas of guilty. Nor did the docket show that such pleas had been entered and later stricken. In short, this attorney had no knowledge with respect to what had occurred at the arraignment.

Some months later the case came on for trial before the same judge who had presided at the arraignment, a jury having been waived. The principal defense was insanity, and, as stated by the District Court, there was a "real issue whether Walker was guilty of first or second degree murder." Walker was convicted of first degree murder and was sentenced to life imprisonment. No appeal was taken.

In 1963—approximately seven years after the conviction—Walker attempted under the Maryland Uniform Post Conviction Procedure Act, Article 27, § 645A–645J, Annotated Code of Maryland (1957), to have his conviction vacated. The application was heard before another judge (Judge Harris). One of the points asserted for relief was that Walker did not have counsel before arraignment or when he first appeared before the trial judge. This contention was dismissed on the finding that the plea of guilty had not been introduced in evidence against Walker during his trial and had not "influenced in the slightest degree the Judge's verdict several months later."

Judge Harris refused to adopt the argument that there was a possibility of prejudice. Leave to appeal was denied by the Court of Appeals of Maryland. Walker v. Warden, 235 Md. 687, 202 A.2d 612 (1964), Chief Judge Brune dissenting.

The District Judge found it unnecessary to pass on the question decided by the P.C.P.A. judge. Without elaboration he stated his conclusion that the trial judge was not disqualified from presiding at the trial *simply because he had presided at the arraignment,* quoting from 30A Am.Jur. (Judges, § 185), p. 95. However, he stated in his written opinion that under Article IV, section 8 of the Constitution of Maryland and Article 75, section 109 of the Maryland Code (1951), "Walker had an absolute right to remove his case, but counsel's ignorance of what had happened at the arraignment prevented him from taking that into account in considering whether he should ask for removal, and whether he would advise Walker to demand a jury trial."

The Constitution of Maryland contains the following provision relating to capital cases:

Constitution, Art. IV, § 8.

"Removal of causes";

"[I]n all cases of Presentments or indictments for offenses, which are or may be punishable by death, pending in any of the courts of law in this State * * * upon suggestion in writing under oath of either of the parties to said proceedings that such party cannot have a fair and impartial trial in the court in which the same may be pending, the said court shall order and direct the record of proceedings in such * * * indictment, to be transmitted to some other court having jurisdiction in such case for trial * * *."

The Maryland statute, Annotated Code of Maryland (1957), Article 75, § 44, "Waiver of jury; removal when fair trial cannot be obtained when case pending" is the legislative action giving force to the constitutional provision. Bullock v. State, 230 Md. 280, 283, 186 A.2d 888, 890 (1962).

■ It is clear that a change of venue under the Maryland Constitution and statute is readily procurable in Maryland in capital cases.[2] The absolute right of removal attaches when one charged with a crime punishable by death files a suggestion under oath that he cannot have a fair and impartial trial.[3]

■ The District Court held that Walker did not have effective assistance of counsel and this holding was stated in the paragraph which follows:

"Of course, the Court should have determined whether Walker was represented by counsel or wished the Court to appoint counsel for him before he was arraigned for a capital crime. Such failure, however, would not ordinarily prevent a trial before the same judge if trial counsel was fully apprised of what had happened at the arraignment. But that is not the situation here. The failure to enter the original plea on the record, coupled with the failure of anyone to advise trial counsel of what had been said and done at the arraignment prevented his having necessary facts before him when he decided whether he should advise Walker *to exercise his absolute right of removal, to demand a jury trial, or to ask for the assignment of another judge to hear the case.* Under all the circumstances this Court concludes that Walker was denied the effective assistance of counsel, in violation of his rights under the Fourteenth Amendment." (Emphasis supplied.)

The arguments are here advanced that (1) the right to the allowance of a change of venue was of no more than academic value to Walker since the information possessed by the arraigning judge would not, *ipso facto,* disqualify him as a trial judge and he would be permitted on a change of venue to try the case in another jurisdiction; (2) no injury is manifest in the election of a trial by the judge rather than by a jury; (3) there is no hint here of an unfair trial; (4) to grant the request to set aside a murder conviction nearly ten years old would be to act upon mere guess and speculation as to what course of action Walker's trial counsel would have pursued had he been fully advised concerning the proceedings at arraignment; (5) Walker's grounds for release are too hypothetical and tenuous to sustain a constitutional claim of invalidity as they raise no substantial question of due process. We are not persuaded by these arguments.

Indeed, it is true, as suggested by the appellant Warden, that we can only speculate as to what course of action Walker's trial counsel would have pursued had he known that his client had twice tendered a plea of guilty to a charge of having committed an offense punishable by death before the judge who was to determine the guilt or innocence of his client. But it is inconceivable that a competent defender, with full information of what had transpired, would not immediately sense the *possibility of prejudice* if the arraigning judge should try the case. He would act to eliminate any such possibility. We quickly conclude that the best interests of the accused would prompt counsel to first obtain removal of the trial to another court. Upon removal, if it appeared likely that the same judge would follow to try the case, the next logical move would be to seek the possible assignment of another judge or exercise the accused's absolute right to a jury trial.

In White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963), the prisoner had been convicted of premeditated murder and sentenced to death. When he had been taken before a magistrate for a preliminary hearing and was not then represented by counsel he entered a plea of guilty to the murder charge but later, when represented by counsel,

2. Brack v. State, 187 Md. 542, 51 A.2d 171 (1947); Jones v. State, 185 Md. 481, 45 A.2d 350 (1946). The Constitution of Maryland gives an absolute right of removal in all cases "on charges of capital crime." Lee v. State, 161 Md. 430, 432, 433, 157 A. 723 (1931).

3. Heslop v. State, 202 Md. 123, 130, 95 A.2d 880 (1952).

entered pleas of "not guilty" and "not guilty by reason of insanity." He was brought to trial before three judges sitting without a jury. At trial the plea of guilty entered at the preliminary hearing before the magistrate was introduced in evidence, no objection being offered. The Supreme Court reversed the conviction and, in a short per curiam, said at page 60:

> "We repeat what we said in Hamilton v. [State of] Alabama, supra, [368 U.S. 52] at 55 [82 S.Ct. 157, at 159, 7 L.Ed.2d 114] that *we do not stop to determine whether prejudice resulted:* 'Only the presence of counsel could have enabled this accused to know all the defenses available to him and to plead intelligently.' * * *." (Emphasis supplied.)

We note that the *White* case involved the point that, while under Maryland law there was no requirement that counsel be appointed for accused at the preliminary hearing nor was it necessary that accused enter a plea at that time, the preliminary hearing was a "critical stage in a criminal proceeding" at which he was entitled to be represented by counsel. As we understand and construe the *White* case the conviction was not reversed solely on the ground that the accused was not represented by counsel at the preliminary hearing. Something more occurred at the trial, something of vital significance. The three trial judges were informed of the earlier admission of guilt when the accused was without the assistance of counsel. The Court did not hold that knowledge of the convicting judges concerning the guilty plea did or did not result in prejudice to the accused. The Court simply found no necessity or obligation to "stop to determine whether prejudice resulted." In the instant case the trial judge had first hand knowledge of Walker's admission of guilt by the repeated tender of a guilty plea in the court's presence. It cannot be logically argued that the trial court's personal knowledge of the admission of guilt is less likely to be prejudicial than similar knowledge obtained by the three judges

in *White* through introduction of evidence at trial. The *possibility* of prejudice is as real in one instance as in the other.

In undertaking the representation of Walker his appointed counsel was operating in the dark, through no fault of his own, completely disadvantaged by his lack of vitally important information. He was not in position to provide the effective representation and assistance to which Walker was entitled. Under these circumstances we conclude that we should not "stop to determine whether prejudice resulted."

Affirmed.

ALBERT V. BRYAN, Circuit Judge, with whom HAYNSWORTH, Chief Judge, joins, dissenting:

The release nisi of Walker now ordered by the court rests wholly on its speculation of what *might* have happened in the prosecution. His counsel *might* have moved for a change of venue; he *might* have asked for another judge; he *might* have asked for a jury; or the judge *might* have been prejudiced. "We can only speculate" concedes the majority, but nevertheless decision goes against the State on this basis. Strangely, it is not speculated that Walker's counsel *might* have preferred to proceed as he did. Above all, Walker does not *even now*, tell us that he desired a jury.

I had thought a petitioner for habeas corpus had the burden to prove Constitutional infirmity in his trial. Now, however, the court presumes error. But if the speculation is to be employed, its present application is faulty.

The ineffective assistance of counsel found by the District Judge does not rest upon the circumstance that the judge who took the plea also tried the case. The ruling was put exclusively on the State judge's failure to enter the original plea of record, and to advise trial counsel of "what had been said and done at the arraignment".

The arraignment-judge was not per se ineligible to be the trial judge. This also was the opinion of the District Judge.

Indeed, the universal rule that a judge is empowered, and frequently is obligated, to reject a plea of guilty recognizes that he need not recuse himself after the plea of not guilty is substituted. Any other rule of practice would contravene unquestioned procedure. Besides, here every judge who should sit in the case thereafter would be affected with knowledge of the first plea, if it had been entered on the docket as required. No contrary view may be gleaned from White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) cited by the majority. The decision was grounded on the lack of counsel at the preliminary hearing and the subsequent use of his uncounseled plea as substantive evidence of guilt. Again speculation is employed by this court—to read into *White* what is not written there.

Of course, it would have been preferable for the criminal court to have stopped the arraignment proceeding immediately upon learning of Walker's lack of counsel, and so prevented any incriminating utterance by the accused. However, while this was a procedural omission, it was certainly not a fatal infirmity in the ensuing trial. Absence of counsel at that moment was not an absence at a critical stage, for the error was correctable and at once corrected.

No merit lies behind the point suggested by the majority that a change of venue or a jury *might* have been requested had defense counsel been aware of the original plea. On a transfer of the case elsewhere, the same judge could have presided. Obviously, there was no denial of a jury; it was obtainable for the asking, *as counsel knew.* Had Walker's counsel known of the initial plea, his jury waiver would still have been unexceptionable. See Hensley v. United States, 108 U.S.App.D.C. 242, 281 F.2d 605, 609 (1960). No injury is manifest or presumable in electing the judge instead of a jury to be his trier. Nevertheless, only because the first plea was known by the trial judge but not to counsel, we are asked to set aside a murder conviction almost ten years old.

The grounds given for Walker's release are too hypothetical and tenuous to sustain a charge of Constitutional invalidity. They raise no substantial question of due process. See Snider v. Cunningham, 292 F.2d 683, 686 (4 Cir. 1961). As Justice Frankfurter so patly said for the Court in Adams v. United States ex rel. McCann, 317 U.S. 269, 281, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942):

> "If the result of the adjudicatory process is not to be set at naught, it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality."

The order for the retrial or release of the appellant should be vacated.