603 P.2d 547

**The STATE of Arizona, Appellee,**

v.

**Michael Bruce CAGLE, Appellant.**

**No. 2 CA–CR 1362.**

Court of Appeals of Arizona, Division 2.

Sept. 21, 1979.

Rehearing Denied Nov. 6, 1979.

Review Denied Nov. 27, 1979.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and David R. Cole, Asst. Attys. Gen., Phoenix, for appellee.

David P. Tiers, Tucson, for appellant.

## OPINION

HOWARD, Judge.

Appellant, charged with first-degree murder, was found guilty by a jury of second-degree murder and sentenced by the trial court to not less than 60 nor more than 70 years in the Arizona State Prison.

Appellant killed his wife by strangling her. He then stabbed her several times after she was dead. He dismembered her body and placed individual parts in plastic trash bags except for her head which he placed in a plastic bag and set it on the shelf of a closet in their trailer. Appellant placed the trash bags in the garbage. They were dumped in the Huachuca City landfill and subsequently discovered.

At trial appellant testified about his wife's quarrelsomeness and physical attacks on him in the past and claimed that on the night of her slaying, she attacked him with a knife. He knocked her arm aside, seized her by the throat and sat on her to restrain her. When she stopped struggling, he got up and she was dead.

Appellant presents the following questions for review: (1) Did the trial court err in refusing to grant a continuance? (2) Was appellant denied due process when a judge unfamiliar with this case heard the arguments on the motion to continue? (3) Did the trial court err in admitting gruesome photographs into evidence? (4) Did the court err in permitting repetitious testimony concerning dismemberment of the victim? (5) Was appellant's sentence excessive? (6) Was it reversible error for the trial judge to have a conversation with a juror during a recess? We find no error and affirm.

■ Ten weeks prior to trial appellant had received permission, at county expense, to hire an investigator in Kansas City, Missouri, to investigate alleged acts of violence

and the reputation in the community of appellant and the victim. Approximately three weeks prior to trial, appellant's counsel made a motion in front of Judge Richard Riley to continue the trial because his investigator had not completed the investigation, because of his trial calendar and because there might be a problem in getting the county to pay the expenses for any witnesses he discovered. The trial court felt that appellant had enough time to complete the investigation and denied the motion for continuance. The day before the trial started, appellant made a motion to continue in front of the trial judge, Judge Helm. The motion stated that the investigation was not complete. Nowhere in the motion was it stated when the investigation would, if ever, be completed. The trial judge agreed with Judge Riley and denied the motion to continue. Appellant contends he was prejudiced because he was unable to secure the statements of individuals who might testify as to prior acts of violence on the part of the victim. Two witnesses from Missouri testified at the trial. One witness testified that the victim had tried to put a cigarette out in appellant's face. The other testified that the victim had previously attacked appellant with a knife. Appellant testified that the victim had at one time tried to run him down with an automobile. Since there was testimony concerning the victim's bad temper, and prior violent acts, we do not believe appellant was prejudiced by the ruling.

As for Judge Riley's hearing the motion to continue, appellant registered no objection at the time the motion was heard. We know of no rule prohibiting Judge Riley from ruling on this motion and in any event, his action was affirmed by Judge Helm.

In his opening statement to the jury, appellant's counsel admitted that appellant had killed his wife, that death was due to strangulation, and that she had been dismembered. Nevertheless, over appellant's objections, the trial court admitted into evidence ten various photographs of the dismembered body parts. There were three different views of the severed head, a pho-

tograph of the upper torso which showed nine stab wounds, a photograph of the heart which showed that it had been perforated in three places by the stabbings, one photograph of her leg, and four photographs of the hands and feet showing that their pads had been incised in order to prevent identification. The doctor who performed the autopsy remarked that the head had been severed by cutting between the vertebrae and the limbs removed by cutting between the joints.

Appellant contends that because of his admissions in the opening statement, the photographs were not relevant and their gruesomeness served only to inflame the passions of the jury.

The trial court has discretion to admit or exclude gruesome photographs and competent evidence will not be excluded simply because it may arouse emotion. *State v. Ferrari,* 112 Ariz. 324, 541 P.2d 921 (1975). Although the appellant admitted the mechanical means by which he accomplished the killing, he never admitted that it was done with malice aforethought. A case on point is *Rivers v. United States,* 270 F.2d 435 (9th Cir. 1959). There, as in the case at bench, the defendant claimed that the strangulation of the victim was not intended. The defendant in *Rivers* cut up the body of her husband and threw it in the ocean. The body parts washed ashore and a number of photographs of the body parts were admitted into evidence. In affirming the action of the trial court the appellate court stated:

"It is well settled that the conduct of an accused person following the commission of an alleged crime may be circumstantially relevant to prove both the commission of the acts charged to the accused and the intent and purpose with which those acts were committed. . . . It is plain that the jury could well infer from the evidence in this case that the dismemberment of the body and the throwing of the portions into the sea were done to conceal a murder or to avoid detection. This would be particularly

true of the act disposing of the finger tips. Such an act would serve the purpose of avoiding identification of the body. Since the photographs would tend to disclose just how the dismemberment was accomplished, examination of the photographs would give some enlightenment as to the defendant's probable state of mind and purpose in performing these acts,—whether it was done wildly, or in a calculated manner. These considerations disclose the relevancy and probative value of this portion of the evidence.

Of course appellant might argue that the dismemberment was as corroborative of her story of panic on discovery of an accidental death, but we must recall that it was the function of the jury to determine whether they believed such story. The mode and thoroughness of the dismemberment would have significance and relevance in permitting the jury to weigh the credibility of the story which the defendant told on the stand; and to decide under all the circumstances whether the effort to conceal a murder was not the more probable answer as to the purpose of the dismemberment.

The contention of the appellant that all of these circumstances which we have just mentioned were never in controversy but were stipulated or admitted is not borne out by the record. The identity of the body and the fact that it was dismembered was admitted by the defense; but the manner, mode and purpose of dismemberment were never admitted or stipulated. Accordingly, for the reasons indicated, we hold the trial court did not abuse its discretion in admitting these photographs and those portions of the body into evidence.

If the mere gruesomeness of the evidence were ground for its exclusion, then it would have to be said that the more gruesome the crime, the greater the difficulty of the prosecution in proving its case."

The trial court did not err in admitting the photographs into evidence.

■ Appellant also contends that the trial court committed prejudicial error by allowing cumulative testimony regarding the severed head and the wounds on the victim's torso. We do not believe that the evidence was cumulative and do not believe that the trial court abused its discretion.

■ Appellant contends that the sentence was excessive. Where a sentence is within permissible statutory limits it will not be modified or reduced on appeal unless it clearly appears excessive under the circumstances. *State v. Pickard*, 105 Ariz. 219, 462 P.2d 87 (1969). Under the circumstances of this case we do not believe that the court abused its discretion.

■ Appellant's last contention is that the trial court erred in denying his motion for a mistrial when it came to the appellant's attention that the trial judge had communicated during the recess with a juror. The conversation with the juror concerned a traffic ticket which the juror had received in Douglas. The juror wanted to know whether or not he had made a mistake in not signing the traffic ticket. The conversation had nothing to do with this case. The trial court did not err in denying the motion for mistrial.

Affirmed.

RICHMOND, C. J., and HATHAWAY, J., concur.